**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

2026 IL App (3d) 250183-U

Order filed July 7, 2026

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2026

| | | |
|---|---|---|
| REAL ESTATE NAPERVILLE II, LLC, | ) | Appeal from the Circuit Court |
| | ) | of the 18th Judicial Circuit, |
| Plaintiff-Appellee and | ) | Du Page County, Illinois. |
| Counterdefendant-Cross Appellant, | ) | |
| | ) | Appeal No. 3-25-0183 |
| v. | ) | Circuit No. 20-MR-599 |
| | ) | |
| E&S MANAGEMENT GROUP LLC | ) | The Honorable |
| WATERSIDE CENTER SERIES, | ) | Anne Therieau Hayes, |
| | ) | Judge, Presiding. |
| Defendant-Appellant and | ) | |
| Counterplaintiff-Cross Appellee. | ) | |

_____

JUSTICE ANDERSON delivered the judgment of the court.
Presiding Justice Hettel and Justice Davenport concurred in the judgment.

_____

**ORDER**

¶ 1     *Held*:   The circuit court's rulings on the parties' cross-motions for summary judgment merged into the judgment following trial and are not reviewable by this court. The circuit court erred as a matter of law in finding that an easement existed granting plaintiff the right to connect its utility services to defendant's utility services. The circuit court's finding that a 2003 plat did not create an easement for a pylon sign is affirmed but judgment on counterplaintiff's pylon sign trespass claim is remanded to allow the circuit court to address the proper remedy for the ongoing trespass. The circuit court's judgment in plaintiff's favor for declaratory relief, including entering a permanent injunction against defendant, and against counterplaintiff on its counterclaim for declaratory relief, and against

counterplaintiff's utility components trespass claim are reversed and remanded. The circuit court's finding that counterplaintiff did not demonstrate a breach of a declaration and the circuit court's finding that neither party demonstrated its right to attorneys' fees under the declaration is affirmed.

¶ 2    Real Estate Naperville II, LLC ("REN2") and E&S Management Group LLC Waterside Center Series ("E&S") each own adjoining commercial space in a Naperville strip mall. E&S owns Lot 2, and REN2 owns Lot 3. E&S has its own complete and independent fire suppression system on Lot 2, which we will reference as its "system." REN2 has only limited parts of a fire suppression system on Lot 3. Other parts of REN2's fire suppression system, the fire suppression sprinkler water supply and fire alarm system, which we will reference as "components," were tied into E&S's system by supply lines that ran onto Lot 2. In the Fall of 2018, E&S informed REN2 it intended to disconnect REN2's components and other electrical conduit from E&S's property. E&S obtained permits to disconnect REN2's components in March and June 2020.

¶ 3    E&S's decision prompted REN2 to file suit seeking declaratory relief, as well as damages for breach of contract in June 2020. E&S counterclaimed for trespass, damages, and declaratory judgment related to REN2's components and utility services (electric conduit, natural gas meters and pipes) and REN2's use of a pylon sign on E&S property. REN2 sought a temporary restraining order to prevent the disconnection of its components which the trial court denied, and E&S disconnected the REN2 components from its system in September 2021.

¶ 4    Both parties subsequently filed cross-motions for summary judgment on all claims. The trial court denied both parties' motions except for E&S's claim that the  use of the pylon sign on E&S property constituted a trespass. Both parties moved for reconsideration. The trial court generally denied the motions for reconsideration but did vacate its judgment on the pylon sign trespass claim, finding a genuine issue of material fact existed regarding the  easement for use of the pylon sign.

2

¶ 5        Following a six-day bench trial, the trial court ruled primarily in REN2's favor. The court found that a Declaration of Reciprocal Easements and Restrictive Covenants (Declaration) granted REN2 an easement for its utility systems on E&S property. The court found that E&S breached the Declaration by disconnecting REN2's components from E&S's system. In light of the easement, the trial court ruled against E&S on its counterclaim for breach of the Declaration and E&S's utility system trespass claim. The court found in favor of E&S on its pylon sign trespass claim. The court denied both parties' requests for attorneys' fees.

¶ 6        For the reasons set forth below, we affirm in part, reverse in part, and remand with directions.

¶ 7                                    I. BACKGROUND

¶ 8        In June 2000, Menard, Inc. purchased land in Naperville, Illinois. Menard first divided the parcel into two lots, on which Menard built and operates a retail store on Lot 1. As the original owner, Menard platted the Final Planned Unit Development Plat of The Waterside Center (2003 PUD Plat).  Lot 2 was eventually sold to Lee Frye.

¶ 9        Frye later divided then-existing Lot 2 into two smaller parcels: Lot 2 and Lot 3. In 2003, Frye sold Lot 2 to Real Estate Naperville LLC (not related to REN2) and Lot 3 to N-L Naper LLC (in which Frye held an ownership interest). Lots 2 and 3 are governed by the Declaration executed on September 3, 2003, and recorded on October 2, 2003.

¶ 10       The Declaration defines "Outlet Parcel" as "those certain parcels of land *** described as Lots 2 and 3 of the Final P.U.D. & Subdivision Plat, Menards of Naperville Second Subdivision ***." A "Parcel" is defined as "a lot identified on Exhibit A, or any division thereof. The term 'Parcels' shall refer to any combination of two or more Parcels, or all collectively." "Utility Lines"

is defined as "those facilities and systems for the transmission of utility services, including the storm water drainage, collection, and retention, detention and distribution facilities."

¶ 11 Article V of the Declaration, titled "Common Easements," provides, in relevant part:

"**A. Nonexclusive Easements:** The parties grant the following for their respective use, for the use and benefit of the other Parcels, and for the use of their Permittees, in common with all others entitled to use the same, a perpetual, non-exclusive easement over the Parcels for:

\*\*\*

2. The construction, installation or service of Utilities, subject to Section V(B) below:

\*\*\*

**B. Utilities:** Except as otherwise provided therein, the Owner of each Parcel, excluding Lot 1, shall, at its sole cost and expense, be responsible for the installation, maintenance, repair, replacement, relocation and removal of all Utility Lines installed upon or serving its Parcel, whether on the Parcel, another Parcel or public roadway. Each party agrees that:

1. All such installation, maintenance, repair, replacement, relocation and removal shall be performed in a manner that causes no unnecessary discontinuance of any utility service to any other Parcel;

\*\*\*

7. Each Party shall be responsible for its own gas meter, electric, and telecommunications vault.

4

¶ 12    A building was constructed on Lot 2 in 2004. In 2005, the owner of Lot 3 sought approval to buildout a continuation of the existing building on Lot 2 for additional retail spaces. On April 20, 2005, the City of Naperville approved the Preliminary/Final Planned Unit Development Plat of Waterside Center Phase II allowing the conversion of a planned bank to retail stores on Lot 3.

¶ 13    In June 2005, REN2 purchased Lot 3 as vacant land. Pursuant to a Party Wall Agreement, the east wall of the building on Lot 2 is on the property line of Lot 2 and Lot 3, with footings on both lots. In 2007, a building on Lot 3 was constructed. The west wall of the building on Lot 3 is the east wall of the building on Lot 2. On April 30, 2008, REN2 applied with the City for a variation to allow for a third monument sign on Lot 2. On September 16, 2008, the City approved Resolution No. 08-053, authorizing a third sign on Lot 2.

¶ 14    The building on Lot 2 has a complete fire sprinkler system that is connected to a fire alarm control panel and the City's water main. The sprinkler pipes and alarm devices of the building on Lot 3 ("REN2 Building") are connected to the hydraulic system, alarm control panel, fire suppression equipment, and water main of the building on Lot 2. The REN2 Building is also connected to Lot 2's building's electric transformer. The REN2 Building's natural gas pipes and gas meters are attached to the side and roof of the building on Lot 2.

¶ 15    E&S acquired title to Lot 2 in December 2017, via special warranty deed. In the fall of 2018, E&S informed REN2 that it would no longer allow the REN2 Building to share its existing system. Over the next two years, E&S asked REN2 to disconnect its components from E&S's system. In March and June of 2020, E&S obtained permits from the City to disconnect REN2's components from E&S's system.

¶ 16    On July 15, 2020, REN2 filed suit against E&S. Count 1 sought declaratory judgment prohibiting E&S from: (1) shutting off the water source that supports the current fire suppression

5

system or the electricity through the exterior electrical conduit system for the REN2 Building; (2) constructing a new fire suppression system or exterior electrical conduit system that interferes with REN2's use of its building; and (3) constructing a new fire suppression system or exterior electrical conduit system that would result in the disconnection of REN2's current water source or electricity. Count 2 alleged that E&S would be in breach of the restrictive covenants of the Declaration if it disconnects the components and utility systems presently used by REN2.

¶ 17    E&S filed a counterclaim seeking declaratory judgment that it had the right to disconnect REN2's components and utility systems that were on E&S property. In addition, E&S alleged that REN2 did not have the right to use the pylon sign on Lot 2. Count 2 of the counterclaim alleged trespass for REN2 connecting to E&S's fire suppression system, utility systems, and using the pylon sign on Lot 2. Lastly, count 3 sought to enjoin REN2 from continuing to breach the Declaration. Prior to trial, REN2 was given leave to amend its complaint to seek attorney's fees under the Declaration.

¶ 18    REN2 also sought a temporary restraining order to prohibit E&S from disconnecting its components from E&S's system and from removing the exterior electrical conduit system and electric panel from the REN2 building. Following an August 2020 hearing, the trial court denied the request for a temporary restraining order.

¶ 19    On September 21, 2021, E&S disconnected REN2's components from its system. Doing so left the REN2 Building without a complete fire suppression system in violation of City code. After receiving notices of City code violations, REN2 installed its own complete fire suppression system.

¶ 20    In March 2023, the parties submitted cross motions for summary judgment on all claims. The trial court denied judgment on REN2's claims for declaratory judgment regarding REN2's

6

components on E&S property. The court found that no actual declaratory judgment issue remained as it had already "progressed too far" and the only remaining issue was REN2's claim for contract damages. The court found that a genuine issue of material fact existed as to REN2's breach of contract claim, specifically, whether the property at issue was an addition or two separate properties. The court also denied E&S's request for declaratory relief as it relates to the removal of REN2's utility services. The court found that the Declaration relied on by both parties was ambiguous on its face and there was insufficient evidence of the drafters' intent at the time the Declaration was made to resolve the ambiguity. The ambiguity in the Declaration also prevented summary judgment for E&S's utility systems trespass claim.. The court granted summary judgment in E&S's favor on its pylon sign trespass claim, finding the 2003 PUD Plat did not demonstrate an easement allowing REN2 to use the pylon sign. Lastly, the court denied E&S's request for attorneys' fees, finding the particular article allowing fees in the Declaration not applicable to the pylon sign trespass claim.

¶ 21    Both parties moved for reconsideration of the trial court summary judgment rulings. The court denied E&S's motion for reconsideration and granted REN2's motion for reconsideration only as to the pylon sign trespass claim. The court found that whether an easement for the pylon sign was granted under the 2003 PUD Plat was ambiguous and there is a genuine issue of material fact on whether the grant of an easement was intended.

¶ 22    After a six-day bench trial, the trial court ruled in REN2's favor on all counts of its complaint. First, the court found that Article V of the Declaration "clearly and unequivocally" grants REN2 "a non-exclusive easement to cross over the lot lines for the 'service of utilities.' " Thus, REN2 has a non-exclusive easement to access the entirety of Lot 2 for the service of utilities, including connecting to E&S's transformer, gas meter bank, and water. REN2 also had satisfied

7

any conditions subsequent outlined in the Declaration for the electrical and communications vault and gas meters. The court permanently enjoined E&S from disconnecting any of Lot 3's remaining utility services and removing pipes and conduits running along Lot 2's building and on its roof.

¶ 23       The trial court further found that E&S breached the Declaration when it unilaterally disconnected REN2's components from E&S's system that served both Lots 2 and 3. The court awarded REN2 $72,729.53 in damages, the cost to REN2 to install its own complete separate fire suppression system on Lot 3. Having found that the Declaration gave REN2 an easement as to the utility systems, the court denied E&S's request for declaratory relief and trespass related to the utility systems. The trial court found that REN2 did not have a license or easement for placement of the pylon sign on Lot 2 and so REN2's placement of the pylon sign constituted a trespass on E&S's property. However, because E&S never requested removal of the pylon sign, the court did not order removal but instead awarded what it termed nominal damages of $10,000.00. Lastly, the trial court denied REN2's affirmative defenses and both parties' requests for attorneys' fees.

¶ 24                                    II. ANALYSIS

¶ 25       On appeal, E&S raises four issues. First, E&S argues that the trial court erred in denying summary judgment on E&S's counterclaims of trespass and breach of the Declaration and in granting REN2's motion to reconsider the grant of partial summary judgment on E&S's pylon sign trespass claim. Second, E&S argues that the court erred in finding that REN2 had an easement for the utility services resulting in the improper denial of its trespass claims related to the utility services and the granting of declaratory judgment in REN2's favor. Similarly, the trial court erred in granting judgment in favor of REN2 and against E&S on the breach of contract crossclaims. Third, the trial court erred by refusing to enjoin REN2's ongoing trespass for the pylon sign. Finally, E&S argues it is entitled to attorneys' fees under the Declaration.

8

¶ 26      In the cross appeal, REN2 argues that the trial court erred in finding there was not an easement for its use of the pylon sign on Lot 2 and in denying its attorneys' fees.

¶ 27      A. Denial of Summary Judgment Motions

¶ 28      Both parties moved for summary judgment on all claims and counterclaims. The trial court denied all motions for all claims apart from E&S's pylon sign trespass claim for REN2's use of the pylon sign on E&S property. However, upon reconsideration, the court vacated the grant of partial summary judgment. E&S contends that the trial court erred in denying its motion for summary judgment and granting REN2's motion for reconsideration. REN2 argues that the trial court's summary judgment and reconsideration decisions are not reviewable by this court because the judgment as to those motions merged into the judgment following trial.

¶ 29      Generally, when a case proceeds to trial following the denial of a motion for summary judgment, the denial of summary judgment is not reviewable by this court because the result of any error is merged into the judgment entered following trial. *Bellville Toyota, Inc. v. Toyota Motor Sales U.S.A., Inc.*, 199 Ill. 2d 325, 354 (2002). It would be unjust to the prevailing party who obtained a judgment following a more complete presentation of the evidence to have that judgment overturned after a review of the denial of prior summary judgment. *Id*. However, if the issue raised in the summary judgment motion is a question of law and would not be dependent on fact finding at trial, the denial of summary judgment does not merge and is reviewable by the appellate court. *Schiller v. HomeServices of Illinois, LLC*, 2024 IL App (3d) 220405, ¶ 24.

¶ 30      E&S argues that no material questions of fact existed and only questions of law were presented in the parties' filing cross-motions for summary judgment. The filing of cross-motions for summary judgment can indicate there are no material issues of fact and only questions of law are involved. *RDC Case Creek Trails, LLC v. Metropolitan Airport Authority of Rock Island*

9

*County*, 2020 IL App (3d) 190083, ¶ 14. However, the filing of cross-motions for summary judgment does not establish that there are no genuine issues of material fact, nor does it mandate a court render summary judgment. *Pielet v. Pielet*, 2012 IL 112064, ¶ 28.

¶ 31   Here, the trial court found that genuine issues of material fact existed as to the breach of contract claims, specifically, whether the property at issue is an addition or two separate properties. The court also denied E&S's request for declaratory relief as it relates to the removal of REN2's utility systems because the Declaration relied on by both parties was ambiguous and required evidence to determine the drafters' intent on the systems easement at the time the Declaration was made. The ambiguity in the Declaration also prevented summary judgment as to E&S's utility system trespass claim because the claim is based on REN2 not having the right to utility systems on E&S property. On reconsideration, the trial court found whether an easement for the pylon sign was granted under the 2003 PUD Plat was also ambiguous and required evidence on the intentions of the parties. The trial court's ruling clearly demonstrates that the cross-motions for summary judgment, including on reconsideration, were denied due to the existence of genuine issues of material fact and not on a legal question alone. The judgment of the trial court thus merged into the judgment following trial. Therefore, the trial court's summary judgment rulings are not reviewable by this court.

¶ 32                                    B. Trial

¶ 33   The primary issue before the trial court was whether the Declaration created an easement as to fire suppression components and utilities and whether the 2003 PUD Plat created an easement for the pylon sign on E&S's property.  We address the Declaration easement first.

¶ 34                            1. Declaration Easement

10

¶ 35 Following a bench trial, our review is deferential to the trial court's findings of fact, and they are not disturbed unless they are against the manifest weight of the evidence. *Andrew W. Levenfeld & Associates, Ltd. v. O'Brien*, 2024 IL 129599, ¶ 56. A decision is against the manifest weight of the evidence "only if the opposite conclusion is clearly apparent or the decision is unreasonable, arbitrary, or not based on the evidence." *In re Keyon R.*, 2017 IL App (2d) 160657, ¶ 16.

¶ 36 However, the interpretation of an easement is a question of law reviewed *de novo*. *Cross v. O'Heir*, 2013 IL App (3d) 120760, ¶ 25. The document creating an easement "is construed in accordance with the parties' intention, which is ascertained from the words of the instrument and circumstances contemporaneously to the transaction, including the state of the thing being conveyed and the objective to be obtained." *Id*. If the language of the document is not ambiguous, the trial court is to interpret the document as a matter of law, without the use of extrinsic evidence. *Id*. ¶ 26. If the document that created the easement is ambiguous, the trial court may only then consider extrinsic evidence. *Id*.

¶ 37 The land that benefits from the easement is the dominant estate, while the land that bears the easement is the servient estate. *Chicago Title Land Trust Co. v. JS II, LLC*, 2012 IL App (1st) 063420, ¶ 32. "The law of easements is based on a principle of concurrent rather than exclusive use." *Village of Round Lake v. Amann*, 311 Ill. App. 3d 705, 718 (2000). Generally, courts strictly construe an easement to permit the greatest possible use of the property by its owner. *McMahon v. Hines*, 298 Ill. App. 3d 231, 236-37 (1998). No particular words are necessary for an easement required by grant, but the words used must clearly show an intention by the grantor to confer an easement, and those "terms must be definite, certain and unequivocal." *Id*. at 236.

11

¶ 38    If an easement is limited in purpose or scope, the owner of the property subject to the easement is entitled to prevent the burden of that easement from increasing. *Consolidated Cable Utilities, Inc. v. City of Aurora*, 108 Ill. App. 3d 1035, 1040 (1982). "Whether a misuse or overburdening of the easement has occurred typically depends on how the easement was acquired." J. Buchwalter, *What Constitutes, and Remedies For, Misuse of Easement,* § 2, 111 A.L.R.5th 313, 338 (2003). "[N]o precise rule can be stated as to when the use by the owner of the servient or dominant estate was a reasonable use as distinguished from an unreasonable use, it is a question of fact to be determined from the facts and conditions prevailing." *McMahon,* 298 Ill. App. 3d at 240. If the extent of an easement is exceeded or misused, the dominant owner may become a trespasser and may be liable for damages resulting from the improper use of the easement. *Duresa v. Commonwealth Edison Co.*, 348 Ill. App. 3d 90, 102 (2004).

¶ 39    Section V.A.2 of the Declaration provides in relevant part for "a perpetual, non-exclusive easement over the Parcels for *** the construction, installation or service of Utilities, subject to Section V(B)." Section V.B. provides in relevant part "Utilities: *** the Owner of each Parcel, excluding Lot 1, shall, at its sole cost and expense be responsible for the installation, maintenance, repair, replacement, relocation and removal of all Utility Lines installed upon or serving its Parcel, whether on the Parcel, another Parcel or public roadway." "Utility Lines" are defined as "those facilities and systems for the transmission of utility services, including the storm water drainage, collection, and retention, detention and distribution facilities." The Declaration does not define "utilities" or "service."

¶ 40    The trial court did not state whether it found the Declaration to be ambiguous, but it did not rely on extrinsic evidence in finding that an easement existed, implicitly finding it unambiguous. We agree that the Declaration is not ambiguous, however, we disagree with the trial

12

court's finding that the Declaration creates a non-exclusive easement for REN2 to connect to E&S's utility systems.

¶ 41    The trial court found that Section V.A.2. of the Declaration "clearly and unequivocally provides" that the entirety of Lot 2 and Lot 3 have a "non-exclusive easement to cross over lot lines for the 'service of utilities' " and that phrase "gives REN2 an easement to connect to E&S's transformer, gas meter bank, and water." The court found that the term "service" does not refer to maintenance of a utility but a " ' service' of a utility to the Parcel, such as the service of gas utility, electric utility, or water utility."

¶ 42    Section V.A.2. of the Declaration provides in relevant part for "a perpetual, non-exclusive easement over the [P]arcels for *** [t]he construction, installation or service of [u]tilities, subject to Section V(B)." Section V(B) specifies that it only applies to "Utility Lines" that are part of the transmission of utility services. It does not apply to the totality of a system that includes vaults and other necessary components. This is clearly supported by the fact that Section V(B) (7) states that each party is separately responsible for its own vaults. It would render the Declaration internally inconsistent to read Section V(B) as allowing a party to use another's vault when Section V(B)(7) states each party is responsible for having its own.

¶ 43    Further, the trial court's interpretation of "service" is not consistent with the way the word is used in the Declaration. As a verb, "service" means "to repair or provide maintenance for." Merriam-Webster Online Dictionary, https://www.merriam-webster.com/dictionary/service (last visited March 24, 2026). As an adjective, it can mean "used in serving or supplying." *Id*. Essentially, the trial court reads "service" as an adjective to mean "the supplying" or "means of receiving" the utilities. However, "service" is included in conjunction with construction and

13

maintenance, both used as verbs in the Declaration. Thus, "service" must be read as a verb: to repair or provide maintenance for.

¶ 44    The trial court further found that if the Declaration intended service to mean maintenance it would have used that term. The trial court noted that the Declaration used the terms maintenance and repair in Section V.B., thus it would have also done so in Section V.A.2.

¶ 45    Section V.B.1. of the Declaration provides, in relevant part:

> **B. Utilities:** Except as otherwise provided therein, the Owner of each Parcel, excluding Lot 1, shall, at its sole cost and expense, be responsible for the installation, maintenance, repair, replacement, relocation and removal of all Utility Lines installed upon or serving its Parcel, whether on the Parcel, another Parcel or public roadway. Each party agrees that:
>
> 1. All such installation, maintenance, repair, replacement, relocation and removal shall be performed in a manner that causes no unnecessary discontinuance of any utility service to any other Parcel.

¶ 46    Contrary to the trial court's finding, Section V.B. supports the term service to mean repair or maintain. Section V.A.2. is subject to V.B.1, which includes multiple descriptions of work that may be done on utilities that are not specified in Section V.A.2. In addition, V.B.1. does not include the term "construction" that is included in V.A.2., but V.B. would equally apply to construction.

¶ 47    Further, V.B.7. requires that "[e]ach party shall be responsible for its own gas meter, electric and telecommunications vault." If, as the trial court found in this case, one of the parties can attach to the other party's electrical transformer, which is required to have an electric vault, Section V.B.7. is rendered superfluous. The trial court found that since Lot 3 could connect to Lot 2's transformer there would be no transformer on Lot 3, so Lot 3 does not require an electric vault.

14

However, Section V.B.7. is definitive in the requirement of an electric vault and includes no provisional language such as "if necessary."

¶ 48      In sum, we find that the Declaration does not provide a non-exclusive easement for either lot owner to connect to the other lot owner's utility systems. We reverse the trial court's finding that the Declaration granted an easement to REN2 to allow it to attach to E&S's complete system. Thus, we must address the trial court's judgment as to each of the parties' claims that relate to the presence of such an easement based on the Declaration.

¶ 49      a. E&S's Utilities Trespass Claim

¶ 50      A trespass occurs when a property interest is invaded (*Chicago Title Land Trust Co. v. JS II,* LLC, 2012 IL App (1st) 063420, ¶ 77) and a trespass entitles a plaintiff to at least nominal damages (*Johnson v. Tipton*, 103 Ill. App. 3d 291, 296-97 (1982)).

¶ 51      It is undisputed that REN2's components were on E&S property until E&S disconnected the components in 2021. It is also uncontested that REN2's electrical conduit from E&S's transformer through the shared wall is on E&S's property. Nor is it contested that REN2's gas meters and gas lines are attached to E&S's roof and wall. Without an easement, REN2's utility components on E&S's property constituted a trespass.

¶ 52      The trial court found that E&S's trespass claim based on REN2's components on E&S property was moot because REN2's components were removed prior to trial. That finding was erroneous because the trespass claim was based on REN2's connection to E&S property without authorization that occurred prior to disconnection. While the damages E&S may recover for the trespass that may have ended upon the removal of  REN2's components on E&S's property, the claim and possible damages still existed prior to the disconnection.

15

¶ 53        The trial court further found that there was no trespass for REN2's electric conduit and gas pipes and gas meters on E&S's property because of the court's finding of an easement that included these utility systems. As addressed above, the trial court erred in finding an easement based on the Declaration, thus, there is no easement granting permission to REN2 to have these utility systems on E&S property. Accordingly, the trial court's judgment in REN2's favor regarding E&S's utility system trespass claim is reversed and remanded for the assessment of damages as to these trespasses.

¶ 54                                b. Declaratory Judgment Claims

REN2 sought a declaration, based on the terms of the Declaration, prohibiting E&S from: (1) shutting off the water source supporting the [then] current fire suppression system or electricity that runs through the external electrical conduit system for the REN2 building; (2) constructing a new fire suppression system or exterior electrical conduit system that interferes with REN2's use, occupancy and enjoyment of REN2's building, and (3) constructing a new fire suppression system or electrical conduit system that would result in the disconnection of the current water source or electricity for the REN2 building.

¶ 55        E&S sought a declaration of its rights related to: (1) disconnecting REN2 from E&S's system; (2) removing REN2's electrical conduit from E&S's building; and (3) removing REN2's gas pipes and meters from the roof and side of E&S's building.

¶ 56        We review the trial court's decision in a declaratory judgment under the *de novo* standard of review when the decision is based on questions of law as opposed to factual determination. *Fifield v. Premier Dealer Services, Inc.*, 2013 IL App (1st) 120327, ¶ 12.

¶ 57        The trial court found that any declaration regarding the disconnection of the shared fire suppression system was moot in light of the disconnection of REN2 to E&S's system in 2021. The

16

trial court entered judgment in favor of REN2 on its declaratory action based on finding the non-exclusive easement allowing REN2 access over the entirety of Lot 2 for the service of utilities. In addition, the court found that the conditions subsequent included in the Declaration were met or did not apply. The court denied E&S's declaratory judgment claims.

¶ 58        Based on our conclusion that the Declaration did not create a non-exclusive easement of utilities, including gas, electricity, and water, the trial court's judgment in favor of REN2 on its declaratory judgment claim is reversed. The corresponding permanent injunction restraining E&S from disconnecting REN2's still existing electric conduit and gas pipes and meters, granted by the trial court must also be reversed. The trial court's judgment denying declaratory judgment in favor of E&S is reversed and remanded as to the claim related to the electric conduit, the gas pipes and meters.

¶ 59                                c. REN2's Breach of Contract Claims

¶ 60        REN2 alleged that E&S's unilateral disconnection of REN2's fire suppression components constituted a breach of the Declaration's easement giving REN2 the right to connect to E&S's utility services. In addition, E&S breached other restrictive covenants within the Declaration that barred the unilateral disconnection.

¶ 61        As with REN2's other claims in which judgment was entered in its favor based on the trial court's finding of the easement, judgment in REN2's breach of contract claim based on the presence of an easement in the Declaration is reversed.

¶ 62        The trial court also found that E&S breached three restrictive covenants included in the Declaration when it disconnected REN2's fire suppression components. First, the trial court found that E&S breached Article III A.2.c. which provides "construction activities" cannot "[u]nreasonably interfere with the use, occupancy, or enjoyment of any part of the remainder of

17

the Shopping Center by any other Party or its Permittees." The trial court rejected E&S's arguments that its disconnection of REN2's components from its property was reasonable, at least in part, because it found that REN2 "had a right to connect to the fire suppression system on Lot 2" based on the easement in the Declaration. As the trial court was incorrect in REN2 having this right under the Declaration, any assessment of the reasonableness, or lack thereof, of E&S's action of disconnecting REN2's components from its property based on the presence of an easement must be reversed.

¶ 63 The trial court also found that E&S breached Article IIIA.2.d., which provides "construction activities" cannot "[c]ause any building, structure, or other improvements located on another Parcel to be in violation of any Law." The court found that E&S's disconnection of REN2's components from its property, left REN2 without a complete fire suppression system in violation of City codes. The court rejected E&S's argument that it did not cause REN2 to be in violation of City code because REN2 was already in violation of the City code that required each building to have its own complete fire suppression system. The court found that "whether the shared fire suppression system was in violation of Naperville ordinances is not relevant because *** E&S's disconnection of Lot 3 created a new violation." The court further noted that the City had not cited either party for violation of the City ordinance requiring two separate fire suppression systems but did cite REN2 for not having a fire suppression system after the disconnect. The court found that had E&S not disconnected REN2's fire suppression system components and had it "worked together with the City to facilitate a solution with REN2," REN2 would not have received the citation.

¶ 64 We find the trial court's finding that E&S caused REN2 to violate the law was against the manifest weight of the evidence. E&S is not responsible for REN2 to have a complete fire

18

suppression system on property it has no interest in nor is it responsible to work with the City to facilitate a solution between the City and REN2. REN2 became aware that E&S sought to disconnect REN2's components in September 2018. After learning that E&S received a permit from the City in 2020, allowing E&S to disconnect REN2's components from E&S's property, REN2 filed suit and sought a temporary restraining order to stop E&S which was denied. In September 2021, after giving REN2 notice of its intent to disconnect REN2's components from its property, E&S did so. REN2 was aware of E&S's plans to disconnect REN2's components and that doing so would leave REN2 without a complete fire suppression system in violation of City code. Despite this knowledge, REN2 failed to install its own fire suppression system before the disconnection. REN2's own inaction on its property caused it to be in violation of the City code.

¶ 65 The trial court further found that E&S breached Section V.B.1., which provides that each party agrees that "[a]ll such installation, maintenance, repair, replacement, relocation and removal shall be performed in a manner that causes no unnecessary discontinuance of any utility to any other Parcel." The trial court found that based on the previous two findings, "it is clear that the disconnection caused an unnecessary discontinuance of utility services on Lot 3." In light of this court's findings as to the above two findings, this finding must be reversed. Because judgment on REN2's breach of contract claim is reversed and the claim is remanded, the award of damages of $72,729.53 must also be reversed.

¶ 66 d. E&S Breach of Contract Claim

¶ 67 E&S sought to enjoin REN2's alleged breach of the Declaration, alleging its trespasses unreasonably interfered with E&S's use and enjoyment of its property. E&S also alleged REN2 failed to complete required inspections and interfered with E&S's ability to complete required inspections of the system. In addition, REN2 failed to comply with City code with respect to the

19

system. On appeal, E&S argues that REN2 breached the Declaration by not complying with City code. The trial court found that E&S failed to offer evidence to support its allegations as testimony at trial demonstrated that the fire suppression system passed all inspections from 2018 through 2024, and no citations were issued regarding the maintenance or testing of the shared fire suppression system. The trial court's finding was not against the manifest weight of the evidence. While City Fire Marshal Scott Scheller testified that he believed the building on Lot 2 and Lot 3 needed separate fire suppression systems because it was two buildings, on two lots with different ownership, he never identified any specific City code or international code that may have been adopted by the City requiring such. Nor has E&S identified any code specifically requiring separate fire installation systems.

¶ 68            E&S also argues that REN2 violated the City code requiring separate and complete water service lines. The Du Page County code requires "[a] separate and complete service line shall be installed for each distinct property and premises. In no event shall a single line be allowed to service two (2) properties under separate ownership." Du Page County Code, Ch. 36, Art. 36-340. Here, the water supply for the sprinkler system of the REN2 Building was connected to E&S's water supply for the fire suppression system. However, E&S has not demonstrated that REN2 was in violation of this code as there is no evidence that REN2 did not have its own main water supply line as required by the code. Nor is there evidence of REN2 receiving a code violation for such.

¶ 69            Accordingly, the trial court's determination that E&S failed to demonstrate a breach of the Declaration based on the alleged violation of the law was not against the manifest weight of the evidence. We also note that E&S's claim for alleged breach of the Declaration only sought injunctive relief as to the fire suppression system. That relief was rendered moot in 2021 when

20

E&S disconnected REN2 from its fire suppression system. Accordingly, the trial court's judgment is affirmed.

¶ 70                                    2. Pylon Sign Easement

¶ 71        We next address whether the 2003 PUD Plat created an easement for REN2's use of the pylon sign located on E&S's property.

¶ 72        A plat can convey an easement. *Reiman v. Kale*, 83 Ill. App. 3d 773, 777-78 (1980); *Marshall v. Lynch*, 256 Ill. 522 (1912). REN2 relies on the 2003 PUD Plat to demonstrate an easement for the pylon sign on Lot 2's property to Lot 3. The Plat includes a line from the building on Lot 3 to just north of the curb of the Lot 2 parking lot. A note connected to that line reads "1-4 [inch] PVC CONDUIT FOR LOT 3 SIGN." The abbreviation UE for a utility easement is within the same line. In addition, other notes are included on the Plat such as parking for Lot 3 and sidewalks and drives.

¶ 73        The trial court rejected REN2's argument, finding that the 2003 PUD Plat did not clearly demonstrate an easement for the pylon sign. In addition, the Plat included a notation that "PROPOSED EASEMENTS GRANTED BY A SEPARATE DOCUMENT" and no separate document containing a proposed easement relative to the sign was produced.

¶ 74        We agree that the 2003 PUD Plat does not convey an easement for the owner of Lot 3 (REN2) of the pylon sign on Lot 2's property.  The inclusion of the line from Lot 3 to the location of the sign on Lot 2's property with notation "1-4 [inch] PVC CONDUIT FOR LOT 3 SIGN", without more, does not demonstrate the creation of an easement for the sign by Lot 2. Nor does the inclusion of other notations related to parking, sidewalks, and drives demonstrate the creation of an easement for the sign as any other easements related to parking, sidewalks, and drives were not before the trial court or before this court.  Lastly, as pointed out by the trial court, the 2003

21

PUD Plat provides that proposed easements were granted by a separate document, and no such document was produced.

¶ 75    The trial court ruled in E&S's favor on its trespass claim for REN2's use of the pylon sign on E&S's property after finding the 2003 PUD Plat did not create an easement for such sign (as well as finding REN2 did not have a license to use the sign which is not appealed). As set forth above, we agree with the trial court's determination of a lack of an easement for REN2 to use the sign on E&S's property.

¶ 76    Although it found no easement for the pylon sign, the trial court denied E&S's request for declaratory relief prohibiting REN2 from using the pylon sign, In addition, while the trial court awarded nominal damages to E&S based on the ongoing trespass, the trial court failed to fully resolve the claim at issue. After noting that E&S seeks to prohibit REN2 from using the sign, the court found that "the trespass relates to the pylon sign itself on Lot 2, not REN2's use of the pylon." Finding "no contest regarding the ownership of the sign" (that it was owned by REN2), the court "will not prohibit REN2 from using property that belongs to it." Contrary to the trial court's finding there was no contest regarding the ownership of the sign, evidence at trial demonstrated that while REN2 completed the pylon sign after purchasing Lot 3, the foundation for the sign was constructed on Lot 2 property in 2004, prior to REN2's purchase of Lot 3 and completion of the sign. More importantly, by allowing REN2 to continue to use the sign on E&S's property, the trial court left in place an adjudicated trespass without any form of remedy for that ongoing trespass. See *Field v. Barling*, 149 Ill. 556, 574 (1894) (the court has a duty to render a decree which would settle the controversy).

¶ 77    The trial court's conclusion provides that "[j]udment enters in favor of E&S and against REN2 on E&S's Trespass Claim. Nominal damages are assessed in favor of E&S in the amount

22

of $10,000." Finding no error in the trial court's finding of trespass based on REN2's use of the pylon sign on Lot 2 property, the trial court's judgment in favor of E&S on its pylon sign trespass claim is affirmed. The trial court's judgment against E&S on its declaratory judgment claim related to use of the pylon sign is reversed and remanded. In addition, on remand, the trial court must also address the proper remedy for the ongoing trespass by REN2 for its use of the pylon sign on E&S property.

¶ 78                                    3. Claims for Attorneys' Fees

¶ 79        Both parties sought attorneys' fees as allowed by the Declaration. Section IV.C. of the Declaration provides, in relevant part:

¶ 80            Each Party covenants and agrees, with respect to its Parcel, to comply with the Laws, rules, regulations and requirements of all public authorities and to indemnify, defend and hold each other harmless against any claims, demands, losses, damages, liabilities and expenses and any suits, actions and judgments, including but not limited to, costs and reasonable attorneys' fees, arising out of, or in any way related to, any failure to maintain their respective Parcels in a safe condition.

¶ 81        The trial court denied both parties' request for attorneys' fees, finding that costs and attorneys' fees allowed for in the Declaration were based on a party's failure to maintain their parcel in a safe condition, not an alleged breach of the Declaration as alleged by each party in this litigation. The court found that neither party presented evidence that the other respective parcel was not maintained in a safe manner.

¶ 82        REN2 argues that it should be awarded attorneys' fees because E&S failed to maintain improvements on its parcel when it removed REN2's fire suppression components. Notably, the

23

argument does not contend that E&S failed to maintain its property in a safe condition, rather its action caused Lot 3 to be placed in an unsafe condition. Thus, attorneys' fees under Section IV.C. were properly denied for REN2.

¶ 83 In its second amended counterclaim, E&S sought attorneys' fees pursuant to Article IV.C. of the Declaration "for its attorneys' fees incurred due to REN[2]'s non-compliance with the Declaration." Here, E&S argues that City code required REN2 to have its own fire suppression system and REN2's failure to install a complete fire suppression system "created a 'public safety' situation on Lot 3" resulting in REN2 not maintaining its parcel in a safe condition. As discussed above, E&S failed to demonstrate that REN2 was violating a City code or adopted international code with the shared fire suppression system. As also addressed above, neither REN2 nor E&S was cited with code violations while sharing the fire suppression system and the shared fire suppression system passed all inspections. Accordingly, the trial court properly found that E&S did not demonstrate REN2 failed to maintain Lot 3 in a safe condition. The denial of attorneys' fees as to both parties is affirmed.

¶ 84                                              III. CONCLUSION

¶ 85 For the foregoing reasons, we affirm in part, reverse in part, and remand with directions the judgment of the circuit court of Du Page County.

¶ 86 Affirmed in part, reversed in part, and remanded with directions.

24